IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

KAREN HOLLAWAY,            )
                                           )
             Plaintiff,       )
                                           )
v.                                 )    Case No. CIV-07-406-D
                                         )
PRINCIPAL LIFE INSURANCE COMPANY, )
                                         )
            Defendant.     )

## O R D E R

This matter comes before the Court on Plaintiff's Motion for Summary Judgment [Doc. No. 26]. Plaintiff presents for disposition pursuant to Fed. R. Civ. P. 56 her claim under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). During the pendency of Plaintiff's Motion, Defendant stipulated that its benefit decision is subject to a *de novo* standard of judicial review. *See* Order 2/4/08 [Doc. No. 31]. Plaintiff's Motion is now fully briefed and at issue.

By her Amended Complaint, Plaintiff claims entitlement to long term disability benefits under an ERISA plan established by her former employer, Northwest Pulmonary Physicians, Inc., through a group insurance policy issued by Defendant.[1] The dispute concerns the amount of Plaintiff's monthly payment, which Defendant approved effective November 1, 2005. *See* Am. Compl. [Doc. 12], ¶ 5. The only issue presented is whether Defendant correctly determined the amount of Plaintiff's monthly benefit. The ERISA administrative record concerning Plaintiff's claim has been compiled and filed in the case record by Defendant, the administrator of the plan.

---

[1] Plaintiff filed suit in state court asserting state law claims, but due to ERISA preemption, the case was removed to federal court. Plaintiff then amended her pleading to state an ERISA claim.

**Standard of Decision**

Under the *de novo* standard of review applicable to an ERISA plan administrator's decision, Defendant's determination is entitled to no judicial deference. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Although the parties do not address the burden of proof, the Court has determined that it should make an independent determination based on the record presented and place on Plaintiff the burden of demonstrating "her claim for benefits is supported by a preponderance of the evidence" in the administrative record.[2] *See Niles v. American Airlines, Inc.*, 269 F. App'x 827, 833 (10th Cir. 2008); *Ray v. UNUM Life Ins. Co.*, 224 F. App'x 772, 782 (10th Cir. 2007) (affirming a finding that plaintiff's "claim for benefits was supported by a preponderance of the evidence and [the administrator's] decision to deny her benefits was erroneous"); *see also Luby v. Teamsters Health, Welfare & Pension Benefit Trust*, 944 F.2d 1176, 1185 (3d Cir. 1991) (describing *de novo* review as the district court's making "its own independent benefit decision"). Mindful of Plaintiff's burden, the Court will "simply decide whether or not it agrees with the decision under review." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990); *Hammers v. Aetna Life Ins Co.*, 962 F. Supp. 1402, 1405 (D. Kan. 1997).

In interpreting the terms of an ERISA plan under the *de novo* standard, the Court "'giv[es] the language its common and ordinary meaning as a reasonable person in the position of [the plan] participant, not the actual participant, would have understood the words to mean.'" *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996) (quoting *Blair v. Metropolitan Life Ins. Co.*, 974 F.2d 1219, 1221 (10th Cir. 1992)).

---

[2] Under ERISA, a *de novo* standard does not mean a plenary proceeding. In this case, only materials contained in the administrative record will be considered because the Court has previously determined that Plaintiff failed to justify supplementation of the record under the standard of *Hall v. UNUM Life Ins. Co.*, 300 F.3d 1197 (10th Cir. 2002). *See* Order 11/16/07 [Doc. No. 23].

**Undisputed Facts**

This case arises from Defendant's decision to pay long term disability income benefits to Plaintiff under an insurance policy that was part of an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1002(1). The policy authorized monthly payments to qualified members of sixty percent (60%) of "Predisability Earnings," meaning "Monthly Earnings in effect prior to the date Disability begins." *See* Admin. R. [hereafter "AR"] 65, 91, 292, 311-12. The plan defined "Monthly Earnings" to mean:

> On any date, [a member's] basic monthly (or monthly equivalent) wage then in force, as established by the Employer. Basic wage does not include commissions, bonuses[,] tips, differential pay, housing and/or car allowance, or overtime pay. Basic wage does include any deferred earnings under a qualified deferred compensation plan, such as contributions to Internal Revenue Code Section 401(k), 403(b), or 457 deferred compensation arrangements and any amount of voluntary earnings reduction under a qualified Section 125 Cafeteria Plan.

AR 88, 288-89, 312.

Plaintiff worked as the administrator or office manager for Northwest Pulmonary Physicians, Inc. Pursuant to a written claim, Defendant determined Plaintiff became disabled on November 1, 2005, and approved Plaintiff to receive benefits under the policy effective that date. The claim form submitted to Defendant in March, 2006, requested a benefit of $4,800.00 per month; it was signed by Plaintiff and Dr. Brian Whitson as president of Northwest Pulmonary Physicians, Inc.[3] However, the submitted form did not contain salary information for Plaintiff; it referred to "W-2 – Attached" but the attachment was an earnings statement for a two-week pay period ending December 30, 2005. AR 821. The statement showed Plaintiff was paid for 80 hours at a rate of $50.00 per hour. AR 826.

---

[3] The form is dated March 2, 2006, but Defendant states without contradiction that the form was received on March 9, 2006.

In processing the claim, Defendant requested additional documentation of Plaintiff's earnings. Dr. Whitson stated by telephone, and confirmed in a letter dated March 31, 2006, that Plaintiff's intended wage rate when she was hired in April, 2004, was $22.60 per hour, and that "she had inflated her salary over 100%, $50.00 per hour, for the last 23 months without my written or verbal consent." AR 162, 272. Dr. Whitson also stated that Plaintiff's employment was terminated on March 8, 2006, when the discrepancy was discovered and "[a]lthough no charges have been filed against [Plaintiff] to date, an investigation has been initiated by our local law enforcement agencies." *Id.* In May, 2006, Defendant requested a statement of Plaintiff's earnings. Dr. Whitson then submitted documents showing Plaintiff was paid biweekly for 80 hours at $50.00 per hour throughout 2005, except two pay periods when she received an additional 8-hours of "Paid Time Off," for annual earnings of $104,800.00. AR 264-71. The records showed Plaintiff's pay rate was reduced in February and March, 2006, to $25.00 per hour. AR 270. After receiving these records, Defendant contacted Dr. Whitson again by telephone to ask "if he felt he need[ed] to send any other information regarding [Planitiff's] salary" and he declined. AR 168.

Based on Dr. Whitson's statements regarding Plaintiff's intended wages, Defendant disregarded the documentation of Plaintiff's actual earnings at the time of her disability and instead utilized the rate of $22.60 per hour to calculate Plaintiff's benefit because it "was the hourly wage [her] employer provided."[4] AR 479. As computed by Defendant, Plaintiff's monthly earnings were $3,917.33 and her monthly benefit was $2,350.40. AR 477.

Plaintiff appealed Defendant's decision through the administrative process. Plaintiff, through counsel, asserted that her wage in force at the relevant time was the wage she was actually

---

[4] Defendant also refunded to her employer the excess insurance premiums that had been paid during Plaintiff's employment based on a higher reported salary.

receiving and should not be affected by any claim of fraud that arose later and was unsubstantiated. Plaintiff stated that her former employer had failed to provide her with documents she had requested, such as documents signed by principals of Northwest Pulmonary Physicians, Inc. (Dr. Whitson or Dr. Chatterji) regarding her pay. Defendant did not request additional documentation from Plaintiff's employer but, instead, informed Plaintiff that she needed to obtain "a written explanation from [her] employer that her hourly wage *should have been* something other than $22.60/hour." AR 446 (emphasis in original). When Plaintiff did not supply any documents from her employer to show her "base wage should have been anything other than $22.60," Defendant affirmed its decision to pay her claim "at the hourly rate [Plaintiff] should have received according to her employer, not the inflated rate." AR 429. In Defendant's view, it was simply "correcting an error." *Id.*

## Analysis of the Benefit Decision

The question presented is whether Plaintiff has shown that her monthly earnings in effect before November 1, 2005, should be determined by reference to the actual wages paid by Northwest Pulmonary Physicians, Inc. rather than the intended wages described in the statements of its principal, Dr. Whitson. Both parties base their arguments on the policy's definition of "monthly earnings." Plaintiff emphasizes the phrase "wage then in force" to argue that the monthly wage she was actually receiving in 2005 constitutes her "monthly earnings." Defendant emphasizes the phrase "as established by the Employer" to argue that the monthly wage Plaintiff was authorized to receive in 2005 is the appropriate measure of her "monthly earnings." Defendant also argues that the wage "in force" was the one approved by the employer, not the one the employer actually paid.[5]

---

[5] Defendant makes a curious argument that the employer's payroll records do not establish a "basic wage" exclusive of commissions, bonuses, or overtime pay. However, the question raised by the employer's proof was the proper hourly rate. The Court finds no basis in the record to suggest the "regular" pay shown

Upon consideration, the Court finds the administrative record does not support Defendant's determination that Plaintiff's monthly wage "as established by the Employer" should be based on an amount reported orally by Dr. Whitson and supported by a letter describing the terms of Plaintiff's original employment in 2004.  Although the proper source of information regarding Plaintiff's earnings was Northwest Pulmonary Physicians, Inc., the pay information it supplied showed Plaintiff received wages during the relevant time period at a rate of $50.00 per hour.  The only contrary information was Dr. Whitson's unsworn statements that Plaintiff "had inflated her salary without [his] consent" and "[h]er wage was $22.60 per hour while working for Integris and was to be maintained at that rate."  AR 228.

The plain language of the policy requires a monthly wage to be "established" by the employer.  In the context in which it is used, the common meaning of "establish" is "to prove; demonstrate."  *See* Webster's New World Dictionary, 465 (3d ed. 1988).  All that is proven by Dr. Whitson's letter is the existence of a misunderstanding, or an allegation of fraud, regarding Plaintiff's earnings.  However, the misunderstanding was never resolved.  As far as the record shows, no charges were filed, no fraud was established, and no reimbursement was sought.  In short, Defendant took on the task of "correcting" an error for the employer that the employer apparently did not itself correct in any meaningful way.

Further, the allegation that Plaintiff "inflated" her earnings without authorization does not establish a particular wage rate.  According to the pay records supplied by Dr. Whitson, Plaintiff's wage rate was reduced after the alleged discrepancy was discovered, but it was not changed to the rate he stated.  Therefore, the Court finds the employer, through Dr. Whitson, did not "establish" that Plaintiff's wage rate in force at the time of her disability was $22.60 per hour.  On the record

on payroll records included anything other than a "basic wage."

presented, the only wage rate that can be determined with certainty as "established" by the employer is the wage rate that Plaintiff actually received in 2005.

The Court therefore finds by the preponderance of the evidence in the administrative record that the amount Plaintiff actually earned during her employment constitutes her "monthly earnings in effect prior to the date Disability begins" based on her "basic monthly (or monthly equivalent) wage then in force, as established by the [employer]." The only probative evidence of Plaintiff's basic wage in force during her employment was the employer's record of the amount she received. Defendant wrongly decided on the record before it to reduce the amount of Plaintiff's earnings based on an allegation of her employer that it intended a pay rate different from what its records showed.[6]

In summary, the Court finds Plaintiff is entitled to recover from Defendant the amount of unpaid monthly benefits to which she was entitled during the period she qualified for long term disability payments, according to the terms of the plan, based on a monthly wage computed at a rate of $50.00 per hour. Utilizing the formula provided by Defendant in its brief, Plaintiff's monthly wage was one-twelfth of her annual wage, or $8,666.67, and her correct monthly benefit was $5,200.00.

## Conclusion

Upon independent review of Defendant's benefit decision, the Court finds that Plaintiff was entitled to a primary monthly benefit under the long term disability plan of $5,200.00 per month.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 26] is GRANTED. Judgment shall be entered accordingly.

---

[6] The notion that Plaintiff may have been overpaid as a result of a fraudulent act is troubling to the Court. However, *on the administrative record before the Court*, these matters simply have not been established.

IT IS SO ORDERED this 29th  day of June, 2009.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE